UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Boris Antl, | No. 2:22-cv-00504-KJM-AC |
| Plaintiff, | ORDER |
| v. | |
| AGA Service Company, et al., | |
| Defendants. | |

In 2014, Boris Antl began planning a vacation to Chile. First Am. Compl. ¶ 16, ECF No. 5. He bought travel insurance from AGA Service Company, which does business as Allianz Global Assistance. *Id.* The policy included coverage for emergency medical care. *Id.* ¶¶ 18–22. Later, in a small Chilean village, Antl felt pain in his chest. *Id.* ¶ 25. He went to a clinic. *Id.* He was having a heart attack. *Id.* The clinic could not treat him, so he was taken first to a local hospital, then to a private hospital in a nearby city, where he was admitted to the intensive care unit. *Id.* ¶¶ 26–27. He called Allianz and asked it to fast track any necessary approvals, and he and the doctors repeatedly pleaded Allianz for payment; they would not operate without Allianz's promise to pay. *Id.* ¶¶ 26, 28. It took five days before Allianz's approval arrived. *Id.* ¶ 30. The doctors then operated. *See id.* ¶ 32. Antl was eventually discharged, recovered, and returned home on Christmas Day in 2014. *See id.*

1    Antl did not know it at the time, but the five-day delay permanently damaged his heart.
2    *See id.* ¶¶ 31, 34, 36.  He first learned this fact in late 2021, when a doctor advised him not to do
3    many of the athletic things he had long enjoyed.  *Id.* ¶ 35.  He risked heart failure and death if he
4    did.  *Id.*  The delay had probably also shortened his life.  *See id.* ¶¶ 35, 37.  This news caused him
5    great stress, anxiety, and depression, and he has incurred and will incur costs treating the damage
6    to his heart.  *Id.* ¶¶ 37–38.

7    A few months after learning Allianz's delay had permanently damaged his heart, Antl
8    filed this lawsuit.  *See* Compl., ECF No. 1.  He claims Allianz breached the insurance policy, First
9    Am. Compl. ¶¶ 40–44, acted in bad faith, *id.* ¶¶ 45–56, falsely promised expeditious care, *id.*
10   ¶¶ 57–64, wrongfully subjected him to emotional distress, *id.* ¶¶ 65–77, and violated California's
11   Unfair Competition Law, *id.* ¶¶ 78–82.  He seeks damages, an injunction, attorneys' fees, and
12   other relief.  *See id.* at 13.  Allianz now moves to dismiss under Rule 12(b)(6).  *See generally*
13   Mot., ECF No. 6.  The matter is fully briefed and was submitted after a motion hearing and
14   scheduling conference on July 8, 2022.  *See generally* Opp'n, ECF No. 9; Reply, ECF No. 12;
15   Mins., ECF No. 13.  Rowennakete Barnes appeared for Antl, and Helen Luetto appeared for the
16   defense.

17   Allianz primarily faults Antl for filing this case so many years after he returned from
18   Chile.  *See* Mot. at 6–12.  It contends the statute of limitations has expired.  For that argument to
19   succeed at this early stage, "it must appear 'beyond doubt that the plaintiff can prove no set of
20   facts that would establish the timeliness of the claim.'"  *Rand v. Midland Nat'l Life Ins.*, 857
21   F. App'x 343, 347 (9th Cir. 2021) (unpublished) (quoting *Supermail Cargo, Inc. v. United States*,
22   68 F.3d 1204, 1207 (9th Cir. 1995)).  It is not necessary to detail the various statutes that place
23   limits on the time Antl had to file this case.  None of those limits began to tick away until late
24   2021, and none is so short that it would have run out before this case began.

25   Ordinarily, the clock starts running when a claim is "complete with all its elements," that
26   is, when there has been some "wrongdoing or wrongful conduct, cause or causation, and harm or
27   injury."  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) (quotation marks and citations
28   omitted).  The "discovery rule" is an exception to this general rule.  *Id.*  Under the discovery rule,

2

the clock does not start running until a person actually discovers or has reason to discover the potential claim. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). California courts "do not take a hypertechnical approach" to enforcing this rule. *Id.* They consider whether the person had "reason to at least suspect that a type of wrongdoing has injured them." *Id.*

Antl alleges his heart was damaged in 2014 because Allianz delayed necessary approvals. *See* First Am. Compl. ¶¶ 30–31. The generic "elements" of his claims were, as a result, "complete" in 2014. *Norgart*, 21 Cal. 4th at 397. But Antl also alleges that despite regular follow-up appointments with cardiologists, he did not learn about any permanent damage until late 2021. *Id.* ¶ 34. Nor did he know the cause of that damage before then. *Id.* It is plausible to infer that if Antl ultimately proves these allegations, he could rely on the discovery rule, and if so, this lawsuit would not have come too late. Allianz has not proven "beyond doubt" that Antl filed this lawsuit too late, so its motion is denied in this respect. *Rand*, 857 F. App'x at 347 (quoting *Supermail*, 68 F.3d at 1207).

Allianz raises two further defenses specific to two of Antl's claims. First, it argues Antl cannot move forward with his claim of false promises because he does not explain the circumstances of these false promises "with particularity," as required by Federal Rule of Civil Procedure 9(b). *See* Mot. at 12–15. "Particularity," as that word is used in Rule 9(b), means the complaint must explain the circumstances of the alleged fraud specifically enough to give the defendants "notice of the particular misconduct" so "they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). A common gloss on this standard explains that a complaint must detail "the who, what, when, where, and how" of the alleged fraud. *See, e.g.*, *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Antl's complaint does not meet that standard. He alleges he relied on a promise to cover emergency care, but he does not say what was promised, when, and by whom. He refers only to the executed policy's language. *See* First Am. Compl. ¶¶ 16–23, 57–64. The policy, however, is the alleged result of the fraud, not its cause. This claim is dismissed.

Second, Allianz argues the complaint does not explain why it is liable under the Unfair Competition Law. *See* Mot. at 15–17. Antl explains in opposition and confirmed at hearing that his unfair competition claim rests on the same foundation as his promissory fraud claim. *See* Opp'n at 13. The court has dismissed the fraud claim, so the unfair competition claim is likewise dismissed.

Antl could overcome the shortcomings in his fraud and unfair competition claims with additional allegations about what led him to buy insurance from Allianz. *See, e.g.*, *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("[W]hen a viable case may be pled, a district court should freely grant leave to amend."). The motion to dismiss (ECF No. 6) is therefore **granted in part. Claims four and eight are dismissed with leave to amend**. Any amended complaint must be filed **within twenty-one days**.

IT IS SO ORDERED.

DATED: July 12, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE